AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

**FILED**
OCT 16 2012
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| | ) | 12-MJ-7242 |
| | ) | |
| PARRISH KAPPES | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  between 8/25/2012 and 10/15/2012  in the county of   Douglas   in the
  Central   District of   Illinois  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252A(a)(2)(A) | Distribution of Child Pornography |
| 18 U.S.C. §§ 2252A(a)(5)(B) | Possession of Child Pornography |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

s/ Eric Bowers

*Complainant's signature*

Eric V. Bowers, Special Agent, DHS/ICE
*Printed name and title*

Sworn to before me and signed in my presence.

s/ David G. Bernthal

Date: 10/16/2012

*Judge's signature*

City and state:   Urbana, Illinois   David G. Bernthal, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Eric V. Bowers, being duly sworn, depose and state the following:

1. I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), currently assigned to the Resident Agent in Charge in Springfield, Illinois. I have been so employed since December 2006. As part of my daily duties as an HSI Special Agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have been the Affiant of over 30 search warrants, and I have also participated in the execution of numerous search warrants and criminal complaints, which involved child exploitation and/or child pornography offenses.[1]

2. This Affidavit is made in support a criminal complaint for PARRISH KAPPES. As will be shown below, there is probable cause to believe that KAPPES possessed, received, and distributed visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256)[2] ("child pornography") in violation of Title 18, United States Code, Section 2252 and 2252A.

---

[1] The Seventh Circuit Court of Appeals made arguably adverse credibility findings regarding this witness in *United States v. Slaight*, 620 F.3d 816 (2010). To the extent that the opinion reflects on the testimonial credibility of the agent, the United States respectfully disagrees.

[2] "[M]inor" means "any person under the age of eighteen years." 18 U.S.C. § 2256(1). "[S]exually explicit conduct" means actual or simulated - "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or

1

3. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that KAPPES committed violations of Title 18, United States Code, Sections 2252 and 2252A in Douglas County in the Central District of Illinois. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

4. I am familiar with the information contained in this Affidavit based upon the investigation I have personally conducted and based on my conversations with other law enforcement officers involved in this investigation.

5. The investigation has revealed that KAPPES used a computer connected to the Internet from at least August 25, 2012, through September 15, 2012, and distributed child pornography from his residence on Sunset Drive in Tuscola, Illinois, to HSI Task Force Officer (TFO) / Urbana Police Investigator Tim McNaught.

---

opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2).

## BACKGROUND OF INVESTIGATOR MCNAUGHT

6. Investigator Tim McNaught has been employed as a police officer for the Urbana Police Department for the last 13 years. Investigator McNaught is currently assigned to the Criminal Investigations Division, and has been assigned to investigate child exploitation offenses, including the illegal distribution, receipt and possession of child pornography. Investigator McNaught is a Task Force Officer (TFO) with Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). Investigator McNaught has conducted numerous investigations relating to the possession, transportation, and receipt of child pornography and obscene visual representations of the sexual abuse of children over the Internet.

7. As part of his training and experience, Investigator McNaught has reviewed thousands of images and videos of actual and suspected child pornography, child erotica and obscene visual representations of the sexual abuse of children in all forms of media. Investigator McNaught has received extensive training in digital investigations and computer forensics. Investigator McNaught has also received extensive training in the methods and applications used to conduct investigations of online Peer to Peer (P2P) networks, including the Ares network.

## BACKGROUND OF PEER TO PEER FILE SHARING

8. A growing phenomenon on the Internet is peer to peer (P2P) file sharing. P2P file sharing is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using this

3

software form a network that allows for the sharing of digital files between users on the network. A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up file(s) on a computer to be shared with others running compatible P2P software. A user obtains files by opening the P2P software on the user's computer, and conducting a search for files currently being shared on the network. Ares, one type of P2P software, sets up its searches by keywords. The results of a keyword search are displayed to the user. The user then selects file(s) from the results for download. The download of a file is achieved through a direct connection between the computer requesting the file and the computer(s) sharing the file.

9. For example, a person interested in obtaining child pornographic images would open the P2P application on his/her computer and conduct a keyword search for files using a term such as "preteen sex." The search is sent out over the network of computers using compatible P2P software. The results of the search are returned to the user's computer and displayed. The user selects from the results displayed the file(s) he/she wants to download. The file is downloaded directly from the computer sharing the file. The downloaded file is stored in the area previously designated by the user and/or the software. The downloaded file will remain until moved or deleted.

10. One of the advantages of P2P file sharing is that multiple files may be downloaded in parallel. This means that the user can download more than one file at a time. In addition, a user may download parts of one file from more than one source computer at a time. For example, an Ares user downloading an image file may actually receive parts of the image from multiple computers. The advantage of this is that it

4

speeds up the time it takes to download the file. Often however, a user downloading a file receives the entire file from one computer.

11. The strength of the Ares Network is that it bases all of its file shares on the Secure Hash Algorithm (SHA1). This mathematical algorithm allows for the fingerprinting of files. Once you check a file with a SHA1 hashing utility capable of generating this SHA1 value (the fingerprint), that will be a fixed-length unique identifier for that file. The SHA1 hash is the current Federal Information Processing and Digital Signature Algorithm. The SHA1 is called secure because it is computationally infeasible for two files with different content to have the same SHA1 hash value.

12. A P2P file transfer is assisted by reference to an Internet Protocol (IP) address. This address, expressed as four numbers separated by decimal points, is unique to a particular computer during an online session. The IP address provides a unique location, making it possible for data to be transferred between computers.

13. The computer running the file sharing application, in this case Ares, has an IP address assigned to it while it is on the internet. Investigators are able to see the IP address of any computer system sharing files. Investigators can then search public records that are available on the internet to determine the internet service provider who has assigned that IP address. Based upon the IP address assigned to the computer sharing files, subscriber information can be obtained from the internet service provider.

## THE ARES NETWORK

14. Investigator McNaught knows from his experience that the Ares network is a P2P network that is frequently used in the trading of digital files of child pornography, including still images and movie files. Investigator McNaught knows the following about the Ares file sharing network.

15. The Ares network is an open source public file-sharing network. Most computers that are part of this network are referred to as nodes. A node can simultaneously provide files to some peers while downloading files from other nodes. Nodes may be elevated to temporary indexing servers referred to as "supernodes." Supernodes increase the efficiency of the Ares network by maintaining an index of the contents of network peers. Ares users query supernodes for files and are directed to one or more peers sharing that file. There are many supernodes on the network, if one shuts down the network continues to operate.

16. The Ares network can be accessed by computers running many different client programs, some of which include the original Ares Galaxy program, and derivatives compiled from the source code which is open source and freely available. These programs share common protocols for network access and file sharing. The user interface, features and configuration may vary between clients and versions of the same client.

17. During the installation of an Ares client, various settings are established which configure the host computer to share files.

18.     Depending upon the Ares client used, a user may have the ability to reconfigure some of those settings during installation or after the installation has been completed. Typically, a setting establishes the location of one or more directories or folders whose contents (files) are made available to other Ares users to download. This location is commonly referred to as the "My Shared Folder" and in many versions is defaulted to be on the computer's "Desktop."

19.     The client software processes files located in a user's shared directory. As part of this processing, a SHA-1 hash value is computed for each file in the user's shared directory. The client software processes files located in a peer's shared directory. As part of this processing, a SHA-1 hash value is loaded from a prior record or computed for each file in the user's shared directory.

20.     The Ares network uses SHA-1 values to improve network efficiency. Users may receive a selected file from numerous sources by accepting segments of the file from multiple users and then reassembling the complete file on the local computer. The client program succeeds in reassembling the file from different sources only if all the segments came from exact copies of the same file. The network uses SHA-1 values to ensure exact copies of the same file are used during this process.

21.     Upon connecting to the Ares network, a list of shared files, descriptive information and the files associated SHA-1 values are sent to supernodes. This allows other users to locate these files. The frequency of updating information is dependent upon the client software being used and the Ares networking protocols. This information sent to the ultra-peers is data about the file and not the actual file. The file

remains on the user's computer. In this capacity, the supernode acts as a pointer to the files located on a user's computer.

22. When a download of a file is initiated, the user is presented with a list of users (nodes) who had told the Ares network that they have the requested file available for others to download. Typically, the supernodes and hosts computers on the network return this list containing node information and the Internet Protocol (IP) addresses of computers which have reported they have the same file (based on SHA-1 comparison) or in some instances portions of the same file available to others to download. This procedure allows for the detection and investigation of those computers involved in sharing digital files of known actual child pornography.

23. Obtaining files from the Ares network, as described herein, returns the candidate list, including IP addresses, which can be used to identify the location of computers. Although the IP address is not usually visible to the end user in the common Ares clients, it is returned and used by the software to initiate the download.

## UNDERCOVER INVESTIGATIVE SOFTWARE

24. Third party software is available to identify the IP address of the P2P computer sending the file and to identify if parts of the file came from one or more IP addresses. Such software monitors and logs Internet and local network traffic. Investigator McNaught employed the use of an Undercover Investigative Software (hereinafter referred to as UIS) which is currently used in state and local peer-to-peer (P2P) file sharing investigations to download the files of child pornography from IP address 173.16.160.11. Downloading is a transfer of data from one computer to another. Since Investigator McNaught was doing the download, Investigator McNaught was

8

receiving data which was transmitted from another computer. This software is designed by and for law enforcement and only available to law enforcement officers who have attended the appropriate training. Investigator McNaught has done so. The UIS is designed to connect directly to one IP address and browse or download from one specific peer (computer) at a time. The UIS is a P2P file sharing client similar to other file sharing clients (like "Shareaza" or "Ares") which are free and available to the public.

25. Using source code from a free P2P client, the UIS was modified by/for law enforcement to meet the stringent investigative requirements of these cases. For example, the UIS will only download files from a single source - the target IP address, while the public version will download from many sources. The UIS thus takes much longer to download files because of the single source limitation. The UIS uses only publicly available P2P options which follow the programming language (protocols) set forth in the public P2P protocol standards. No functionality outside of the publicly available protocols is added, thus eliminating any potential private intrusion on the suspect IP's computer or files. The UIS uses the same code and language that is available to any and all software developers.

26. Law Enforcement has modified the Ares program to allow the downloading of a file from a single IP address as well as displaying the IP address which is known to all Ares clients but not displayed.

27. Upon locating an IP address on the P2P networks that is evidencing SHA1 Hash Values of known images/videos of child pornography, the IP address is launched into the UIS by the investigator. An automated function of the UIS will attempt to

9

connect to the IP address when it is observed being "on-line" and send a request to browse (i.e. look at and log the information being transmitted and/or shown by that IP address) and/or download a file from the shared folder of the computer utilizing that IP address. If the connection is not made to either browse or download, the UIS automatically continues to attempt to make a connection with the IP address.

28. If a connection is made with the suspect IP address, the UIS will log the connection. It will also log the browse and/or download in the "logs" - the activity associated to IP activity. Files are then downloaded directly into your Affiant's computer and segregated from any other evidence. Prior to beginning an investigation using the UIS, Investigator McNaught created a folder structure on the hard drive of his computer instructing the UIS to the file path of where to store files that are downloaded and logs that are created. Both the downloaded files themselves as well as the logs will be reported in the appropriate folders created for the target peer IP address by Investigator McNaught. The logs identify that a known SHA1 value of child pornography has been located, that the download transfer started, that the transfer is in fact processing, and that the transfer of the file is complete. The length of time the download process takes depends on the size of the file and speed of the internet/computer of both your Affiant and the target IP's computer.

29. The UIS, being based on P2P program design, ensures that files are obtained directly from the target IP address - assuring a single-source download so that any downloaded file comes directly from the suspect IP address.

30. The UIS was also able to identify a "Nickname" associated with this Ares client as: vidamina@Ares. The "Nickname" is entered by the user during the initial

launch of the Ares Client, and if no "Nickname" is entered, the Ares client assigns a "Nickname" of anon_XXXX@Ares, where XXXX is the hex of the client user's IP address.

31. Investigator McNaught has validated the UIS by conducting investigations manually using publicly available Ares clients and compared the results with the automated UIS process and found the results to be exactly the same.

## PROBABLE CAUSE

32. In August and September 2012, Investigator McNaught was conducting investigations into the sharing of child pornography files on the Ares P2P file sharing network. A computer with the IP address 173.16.160.11 had recently been detected by the UIS as being associated with investigative files of interest by investigators conducting keyword searches or hash value searches for files related to child abuse material, including child pornography, on the ARES network.

33. On August 25, 2012, at approximately 4:18 a.m. Central, Investigator McNaught, utilizing the UIS, identified a computer at IP address 173.16.160.11 as currently being online and connected to the Ares network. During the investigation the Ares client P2P program on the computer with the IP address 173.16.160.11, reported its version as 2.1.1.3035. This client program also reported its ARES nickname as: vidamina@Ares.

34. On August 25, 2012, between approximately 4:18 a.m. and 4:24 a.m. Central, Investigator McNaught, utilizing the UIS, successfully completed a single source download of the following (3) files that the computer located at IP address 173.16.160.11 was making available:

11

      a.      Name: 006-hornytoad's best cp ptn lsm pthc (109)(2).jpg
SHA1: HUQBIWHADZLTQCFM4UAJRWREGNZZMD6W – This image shows an approximately 10-12 year old naked female, she is topless and wearing pink sheer thigh high stockings and a pink bow tie. She is sitting on a floor and leaning back on her right elbow. Her legs are spread thereby exposing her genitals to the camera. There appears to be an open adult pornography magazine lying on the floor next to the juvenile female.

      b.      Name: i fuck my 6yr old daughter.mpg
SHA1: YPCEP5XOKOKQXGO4W2NM7QJDCEMFRH3A – This 8 second video shows an adult male having vaginal intercourse from the rear with a naked juvenile female, approximately 6-8 years old.

      c.      Name: !!!!new!!!!!pthc young boy fucks little girl on bed good !!!!(james)(2)(2).flv
SHA1: NVCM36YBIAWFHZC5WEOTTXQICTJ67ZTM – This 7 second video shows a naked juvenile female, approximately 5-7 years old, lying on her back with her legs in the air and her elbows behind her knees. A juvenile male, approximately 7-9 years old, is kneeling in front of her and he is rubbing his penis against her labia.

35.    On September 9, 2012, at approximately 5:32 a.m. Central, Investigator McNaught, utilizing the UIS, the UIS identified a computer at IP address 173.16.160.11 as currently being online and connected to the Ares network. During the investigation the Ares client P2P program on the computer with the IP address 173.16.160.11, reported its version as 2.1.1.3035. This client program also reported its ARES nickname as: vidamina@Ares.

36.    On September 9, 2012, between approximately 5:32 a.m. and 6:18 a.m. Central, Investigator McNaught, utilizing the UIS, successfully completed a single source download of the following file that the computer located at IP address 173.16.160.11 was making available:

      a.      Name: chaos (69).avi
SHA1: 4H2DEMG3X2TZG5HMAFUSHIF7CTLWP5XG – This 8 minute video shows a juvenile female, approximately 11-13 years old, lying on her back with

her legs spread engaging in anal sex with an adult male. At the end of the video the male removes his penis from the female's anus and ejaculates on her labia.

37. On September 15, 2012, at approximately 2:44 am Central, Investigator McNaught, utilizing the UIS, identified a computer at IP address 173.16.160.11 as currently being online and connected to the Ares network. During the investigation the Ares client P2P program on the computer with the IP address 173.16.160.11, reported its version as 2.1.1.3035. This client program also reported its ARES nickname as: vidamina@Ares.

38. On September 15, 2012, between approximately 2:44 a.m. and 4:38 a.m. Central, Investigator McNaught, utilizing the UIS, successfully completed a single source download of the following file that the computer located at IP address 173.16.160.11 was making available:

    a. Name: (pthc) laura young new 0609 complete - 20m58s_pocketpc(2).avi
SHA1: PWYGR6FYVSIOPFXN7DYWC4TPMFGSTXZH – This 20 minute video shows a juvenile female, approximately 6-8 years old, on a bed with an adult male. The male strips her clothes off and perform oral sex on her. The male engages in vaginal intercourse with the female in several different positions.

39. Your affiant personally viewed the downloaded files above and determined that each of them constitute child pornography pursuant to Title 18, United States Code, Section 2256.

40. A query of IP address 173.16.160.11 was conducted through the American Registry for Internet Numbers (ARIN) and it was determined that IP address 173.16.160.11 is registered to Mediacom Communications Corporation.

41. Information provided by Mediacom, in response to a U.S. Department of Justice Administrative Subpoena, shows that IP address 173.16.160.11 was assigned to

Irene KAPPES, at her residence on Sunset Drive in Tuscola from August 17, 2012, through September 17, 2012.

42. Your Affiant knows that cable high speed Internet service provided by Mediacom must be wired directly to the address of service and cannot be used remotely.

43. On October 12, 2012, at approximately 10:35 a.m., United States Magistrate Judge David G. Bernthal authorized the search of PARRISH KAPPES' residence (that he shares with his grandmother, Irene Kappes) on Sunset Drive in Tuscola, Illinois.

44. On October 15, 2012, Task Force Officers and Agents with Department of Homeland Security, Immigration and Customs Enforcement executed the search warrant at KAPPES' residence. Agents met Kappes as he was returning home from work at approximately 7:30 a.m. in front of his residence. After being advised of the nature of the search warrant, Kappes acknowledged his rights under *Miranda* and agreed to speak with the agents.

45. Kappes admitted that he has been using the P2P file sharing program Ares for the past seven or eight years in order to view, download and share child pornography. Initially, Kappes stated that his pornography collection consisted of 75% adult pornography and 25% child pornography. However, when confronted by the evidence recovered during the on-site computer forensic preview revealing that 95% of his pornography collection consisted of child pornography and 5% consisted of "barely legal"-type pornography; Kappes admitted that the computer forensic examiner's findings were more accurate. Kappes admitted a preference of children between the ages of 10-13. Although he initially denied that he was aroused or masturbated to these

14

images, Kappes later admitted in a second interview with another investigator that he masturbated to the images in his collection.

46. The on-site computer forensic preview showed over 1400 images and over 100 videos of suspected child pornography. Although Kappes appears to have deleted the keyword search terms he used, a review of the files in his collection consistently have the terms "incest" and "daddy daughter" in the file titles. Among the files in his collection were the following:

> Name !!!russiangirlz moscow-mafia-presenet-girl violation 2006 ((pthc) nablot 2 - anal beads !! new!! kleuterkutje).avi
> Last Written 08/21/11 06:42:36AM
> Full Path Kappes\8GB Attache Flash drive\!!!russiangirlz moscow-mafia-presenet-girl violation 2006 ((pthc) nablot 2 - anal beads !! new!! kleuterkutje).avi
> Description: This is a 25 minute 17 second movie file of a prepubescent girl that being anally penetrated by plastic beads on a string. This child has no pubic hair or developed breasts and appears to be six to nine years old. Another prepubescent girl is shown having oral sex performed on her by a pubescent teen girl that appears to be ten to thirteen years old. Several other juvenile females most appear to be under 15 years.

> Name pthc - mlg-daddy's little whore.wmv
> Last Written 11/30/10 12:45:47PM
> Hash Value f6918b6a7f827b3ec6caa29a288e5032
> pthc - mlg-daddy's little whore.wmv
> Description: This 9 minute 21 second movie file of a prepubescent girl that appears to be six to eight years old. The video starts with a title of "Daddy's Little Whore". The child is then rubbing her vagina and body while removing her clothing. The screen cuts to the two captions, "Baby's First Time With Me" and "She can Hardy Wait to Feel My Big Cock in Her!" The view then shows two legs bound up in the air while an adult penis penetrates a child's vagina and anus. The video cuts to various scenes of vaginal and anal penetration. The video ends with a still image of a the adult penis penetrating a vagina just after ejaculating on the labia with the words, "I Leave You With A Creampie In My Baby's Pussy" superimposed over the image.

47. In addition, Agents located a bag hidden in a locked footlocker where Kappes kept 30-40 pairs of female panties. Kappes admitted that while employed as a

furniture delivery person he stole these panties, from the dirty clothes hamper, of the persons who homes he entered. Kappes stated that most of the panties were adult sizes and only a few were children's. Upon examination by the agents, it appears that 75% are children's panties, judging by their size and the rest are adult.

48.    Agents located images that appeared to have been taken by Kappes within his Ares shared folder of a young female approximately 17 years old at the time, dressed in a bikini. When confronted with this image, Kappes admitted that he took some pictures of minor children playing in an outdoor pool behind his residence in an adjacent lot. He stated that he began taking pictures of the girls were 7-8 years old. Agents located Kappes's most recent digital camera on the back of a shelf in the garage, when asked why he kept his camera there, he stated, so the camera was readily available to him and he wouldn't have to go back into the house to retrieve it if he wanted to take pictures.

FURTHER AFFIANT SAYETH NOT.

s/ Eric Bowers

Eric V. Bowers, Special Agent
Department of Homeland Security
Homeland Security Investigations

Subscribed and sworn before me this 16th day of October, 2012.

s/ David G. Bernthal

DAVID G. BERNTHAL
United States Magistrate Judge